UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HENRY TERRY,

                                Plaintiff,

                                                        9:12-CV-1544

v.

                                                        (TJM/TWD)

BEVERLY CAMPBELL; PATRICIA SCHWARTZ;
COSINO FERRARI, M.D.; VONDA
JOHNSON M.D.,

                                Defendants.
_____

APPEARANCES:                                       OF COUNSEL:

HENRY TERRY
08-A-3803
Plaintiff *pro se*
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN                ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12223

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

      This *pro se* civil rights action commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). Plaintiff Henry Terry is confined in the Clinton Correctional Facility ("Clinton"). (Dkt. No. 1 at ¶ 2.) Plaintiff has sued Defendants Beverly Campbell ("Campbell"), Educational Supervisor at

Clinton; Patricia Schwartz ("Schwartz"), an Educational Instructor at Clinton; Cosino Ferrari, M.D. ("Ferrari"), a physician at Clinton; and Vonda Johnson, M.D. ("Johnson"), Facility Health Services Director at Clinton. The action arises out of Plaintiff's unsuccessful attempt to be excused from attending educational instruction at Clinton for medical reasons. (*See* Dkt. No. 1.) Plaintiff has alleged violation of his First Amendment right to privacy, Eighth Amendment right to be free from cruel and inhuman punishment, and Fourteenth Amendment right to due process. *Id.*

Defendants Campbell, Schwartz, and Ferrari have filed an Answer to Plaintiff's Complaint. (Dkt. No. 19.) Defendant Johnson has moved to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) solely on the grounds that the Complaint fails to allege personal involvement by her in the alleged violation of Plaintiff's rights under the Eighth Amendment. (Dkt. No. 18.) For the reasons set forth herein, I recommend that Johnson's motion to dismiss be denied.

**I.   BACKGROUND**

On April 19, 2012, Plaintiff sent a written request to the medical unit at Clinton requesting a waiver from school programming because of a medical condition which causes him to suffer from migraine headaches and dizziness when he engages in periods of reading and writing. (Dkt. No. 1 at 8.[1]) When Plaintiff saw a nurse on April 23, 2012, he was told he needed "proof of condition" to be removed from school. *Id.* Two days later, Plaintiff made a request to

---

[1] Page references are to the page numbers assigned by the Northern District of New York electronic filing system.

be removed from school to his teacher, Defendant Schwartz, and Educational Supervisor, Defendant Campbell.[2] *Id*. Schwartz and Campbell told Plaintiff he would need to provide proof of his education to be excused from school and that no matter what medical condition he had, he would not be removed from school unless he was dying. *Id.*

On May 15, 2012, Plaintiff asked his mother to have his former school district send proof of his education to Defendant Campbell. *Id*. Defendant Campbell allegedly told Plaintiff that she had received a letter from the school district but was not going to honor it. *Id*. As a result, Plaintiff was forced to continue to attend a class that caused him to suffer through four hours of migraine pain. *Id*. at 9.

Plaintiff saw a nurse on June 29, 2012, and was told arrangements would be made for him to see a doctor to get him removed from school. *Id.* The nurse indicated it would take a week or two to get things resolved. Plaintiff was given a medical pass excusing him from school on July 5, 2012, and was told the doctor would see him in a few days. *Id.* On July 10, 2012, after Defendants Schwartz and Campbell had called the medical unit to find out why Plaintiff could not attend school, Plaintiff saw Defendant Ferrari, who told Plaintiff to take Motrin until he could obtain Plaintiff's medical records. *Id*. Ferrari informed Plaintiff the medical pass would continue. *Id*. However, Plaintiff was forced to surrender his medical pass or face disciplinary action on July 22, 2012, after Schwartz had spoken with Ferrari and was told that the medical pass was no longer needed and was to be revoked. *Id*. at 10.

---

[2] Plaintiff has alleged that the request to Defendants Schwartz and Campbell was made pursuant to an unspecified Department of Corrections and Community Supervision ("DOCCS") directive.

Plaintiff wrote to his correctional counselor to request a program refusal on July 25, 2012, even though it could affect his chances for parole. *Id*. Plaintiff felt that it was the only way to keep from suffering daily pain. *Id*. Plaintiff also wrote to Willie Lopez ("Lopez"), the Supervising Counselor, in accordance with DOCCS rules. *Id*. Plaintiff received written responses from Lopez and Campbell stating that he could only refuse a program at the quarterly review. *Id*. According to Plaintiff, he filed a grievance against Campbell, Schwartz, and Ferrari because there were inmates who had been allowed to refuse programs at times other than the quarterly review. *Id.* at 10-11. The August 1, 2012, decision on the grievance informed Plaintiff that because his grievance involved medical and administrative staff, it was a non-grievable issue and instructed him to address the issue with the medical supervision command. *Id*. at 11.

Plaintiff wrote to Defendant Johnson, Facility Health Services Director, on August 2, 2012, explaining the issue he was having with Ferrari and other individuals and requesting copies of his medical files. *Id*. When Plaintiff was called down to see Ferrari on August 7, 2012, Ferrari asked Plaintiff why he was causing trouble for him and indicated that he would email Lopez and ask him to remove Plaintiff from school. *Id.* When Plaintiff received his medical records, he learned that Ferrari had not sent the email but had discussed Plaintiff's medical status with Schwartz, who had informed Ferrari that Plaintiff never displayed any symptoms in class and received good grades. *Id.* at 12.

On August 12, 2012, Plaintiff wrote to Defendant Johnson again to explain that Ferrari had breached confidentiality by sending his medical records to Schwartz and allowing her to comment on his medical care. *Id*. Plaintiff also wrote to Clinton Deputy Superintendent Proulx

("Proulx"). *Id.* Proulx responded to Plaintiff's letter by informing him that the letter would be sent to Lopez for review and action, and on August 23, 2012, Plaintiff received a letter from Lopez stating that he would not remove him from school and had done all he could do for Plaintiff. *Id*. at 12-13.

Plaintiff was seen by Ferrari again on September 11, 2012. *Id*. at 13. Ferrari told Plaintiff that "this jail needs to keep the classroom seats full in the school." *Id.* Ferrari also informed Plaintiff that he would no longer be his assigned care provider because Plaintiff caused him too much paperwork, and he was sick of Plaintiff. Ferrari declined Plaintiff's request to see an outside specialist. *Id*. Later that day Schwartz told Plaintiff if he did not complete all of the assignments she issued, she would write a disciplinary ticket and have him sent to the Special Housing Unit. *Id*. Plaintiff was thereafter forced to endure great pain to avoid disciplinary actions. *Id.*

A few days later, on September 14, 2012, Plaintiff received a letter from Lopez indicating that effective September 17, 2012, he no longer had to attend school. *Id*. at 14. However, on September 21, 2012, he received another letter from Lopez informing him that effective September 21, 2012, he had to go back to school. *Id*. As of the time this action was commenced, Plaintiff was still assigned to the school program and still suffering from migraines, nausea, and vomiting. *Id*.

## II. PROCEDURAL HISTORY

Plaintiff's Complaint in this action was filed on October 12, 2010. (Dkt. No. 1.) Plaintiff thereafter filed a motion for a preliminary injunction seeking to enjoin Defendants from

retaliating against him for filing complaints, grievances, and legal proceedings concerning the violations of his rights as alleged in his Complaint. (Dkt. No. 8.) The district court conducted an initial review of Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and, in a Decision and Order filed on January 2, 2013, required a response to the Complaint. (Dkt. No. 10). In the January 2, 2013 Decision and Order, Judge McAvoy also granted Plaintiff's application to proceed *in forma pauperis*; denied his request for appointment of counsel, without prejudice; denied his motion for a preliminary injunction; and dismissed the action without prejudice as against original Defendant Willie Lopez at Plaintiff's request. *Id*.

The Rule 12(b)(6) motion to dismiss presently before me was filed on February 19, 2013. (Dkt. No. 18.)

### III. ANALYSIS

#### A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). Fed.R.Civ.P. 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states

a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679  (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id*. at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id*.  (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).  Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to

7

dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations in plaintiff's opposition papers) (internal quotations and citations omitted), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

### B. Plaintiff's § 1983 Claim Against Defendant Johnson

Defendant Johnson is identified in Plaintiff's Complaint as Facility Health Services Director at Clinton. (Dkt. No. 1 at 7, 11.) Plaintiff claims that Johnson and the other defendants violated the Eighth Amendment prohibition against cruel and inhuman punishment by denying Plaintiff adequate medical care and requiring him to attend educational classes even though doing so gave him migraine headaches and dizziness.[3] (Dkt. No. 1 at 5.)

The only allegations in Plaintiff's Complaint concerning Johnson are that: (1) he wrote to

---

[3] The Eighth Amendment prohibits the "the unnecessary and wanton infliction of pain" on those convicted of crimes, including deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Defendant Johnson's Rule 12(b)(6) motion does not challenge the sufficiency of Plaintiff's Eighth Amendment claim against her except as to her personal involvement.

8

her on August 2, 2012 explaining the problem he was having with Defendant Ferrari and other individuals and requesting copies of his medical records; and (2) he wrote to her again on August 12, 2012 explaining that Ferrari had disclosed his confidential medical information to Defendant Schwartz and allowed Schwartz to comment on Plaintiff's medical care. *Id.* at 11-12. Inasmuch as Plaintiff was given his medical records, it can be inferred from the allegations in Plaintiff's Complaint that Johnson provided the records (or arranged to have them provided) to him in response to the request made in his first letter to Johnson. *Id.* at 12. Furthermore, construing Plaintiff's *pro se* Complaint liberally, as I am required to do, the allegation that Ferrari asked Plaintiff why he was causing trouble for him five days after Plaintiff sent the letter to Johnson raises an inference that Johnson communicated with Ferrari concerning Plaintiff's first letter.[4] *Id*. at 11.

Although the allegations in Plaintiff's Complaint raise the inference that Johnson responded to Plaintiff's first complaint letter, the Affidavit submitted by Plaintiff in opposition to Johnson's motion to dismiss suggests his claim is one for supervisory liability arising out of Johnson's alleged failure to resolve the situation with Ferrari. In his Affidavit, Plaintiff states that as Facility Health Services Director, Johnson is responsible for supervising the physicians in the Clinton medical department. (Dkt. No. 24 at ¶ 1.) Plaintiff contends that because Johnson failed to act on his problem after being told of it, and because she did not attempt to resolve the situation involving Ferrari, one of her subordinates, and allowed it to continue, she should be

---

[4] There are no allegations in Plaintiff's Complaint suggesting that Johnson took any action with regard to Plaintiff's second letter which dealt with Defendant Ferrari's alleged violation of Plaintiff's First Amendment rights by breaching medical confidentiality.

held liable under § 1983. *Id*. at 2.

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant may not be held liable in a § 1983 action merely because he or she held a high position of authority). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful

acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).[5]

Although the Court of Appeals has expressly held that a supervisor can be held liable under § 1983 for a failure to remedy a wrong after being informed through a report or appeal, *Colon, id.*, courts in this district have repeatedly held that supervisory liability cannot be established by an official's failure to respond to grievance letters or requests for investigations from prisoners. *See, e.g., Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (noting that a number of courts have held that "[t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citation and internal quotation marks omitted); *Walker v. Pataro*, No. 99 Civ. 4607 (GBD)(AJP), 2002 WL 664040, at *12, 2002 U.S. Dist. LEXIS 7067, at *43 (S.D.N.Y. Apr. 23, 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability."); *Rivera v. Goord,* 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored are insufficient to hold those officials liable under § 1983).

---

[5] The Supreme Court's decision in *Iqbal*, 556 U.S. 662 has arguably nullified some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this motion that *Colon* remains good law.

"On the other hand, where a supervisory official receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint), personal involvement will be found under the second *Colon* prong: the defendant after being informed of the violation through a report or appeal, failed to remedy the wrong." *Walker,* 2002 WL 664040, at *13, 2002 U.S. Dist. LEXIS 7067, at *44 (citations and internal quotation marks omitted); *see also Johnson,* 234 F. Supp. 2d at 363 ("personal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievances or otherwise reviews and responds to a prisoner's complaint."); *Bodie v. Morgenthau,* 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). The inferences raised in Plaintiff's Complaint indicate that Johnson took action in response to Plaintiff's first letter to her.

Plaintiff's supervisory liability claim against Johnson, as articulated in his Affidavit, is on its own insufficient to survive Johnson's Rule 12(b)(6) motion. However, while it is questionable whether the allegations in Plaintiff's Complaint which raise an inference of personal involvement by Johnson are sufficient to withstand summary judgment, they are adequate to state a facially plausible § 1983 claim against Johnson. Therefore, I recommend that Defendant Johnson's Rule 12(b)(6) motion be denied.

` **ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendant Johnson's Rule 12(b)(6) motion to dismiss for

failure to state a claim (Dkt. No. 18) be **DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: May 29, 2013
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge