UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HENRY TERRY,

                                        Plaintiff,

                                                                9:12-CV-1544

v.

                                                                (TJM/TWD)

BEVERLY CAMPBELL; PATRICIA SCHWARTZ;
COSINO FERRARI, M.D.; VONDA
JOHNSON M.D.,

                                        Defendants.

_____

APPEARANCES:                              OF COUNSEL:

HENRY TERRY
08-A-3803
Plaintiff *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN            ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12223

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>ORDER AND REPORT-RECOMMENDATION</u>

This *pro se* civil rights action commenced pursuant to 42 U.S.C. § 1983, has been referred

to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United

States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Plaintiff Henry Terry is a prison inmate who at all times relevant to the claims asserted in

this lawsuit was confined in the Clinton Correctional Facility ("Clinton"). Plaintiff has sued

Defendants Beverly Campbell ("Campbell"), Educational Supervisor at Clinton; Patricia Schwartz

("Schwartz"), an Educational Instructor at Clinton; Cosino Ferrari, M.D. ("Ferrari"), a physician

at Clinton; and Vonda Johnson, M.D. ("Johnson"), Facility Health Services Director at Clinton.[1]

The action arises out of Plaintiff's unsuccessful attempt to be excused from attending educational

instruction at Clinton and the alleged violation of his privacy.  (*See* Dkt. No. 1.)   Plaintiff has

alleged violations of his First Amendment right to privacy, Eighth Amendment right to be free

from cruel and inhuman punishment, and Fourteenth Amendment right to due process.  *Id.*  The

only relief sought by Plaintiff is in the nature of injunctive relief.  *Id*. at 8 and 15.  Plaintiff's

Complaint affirmatively states that he seeks no monetary damages.  *Id*. at 15.

Defendants have moved for summary judgment dismissing Plaintiff's Complaint pursuant

to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 35.)  Subsequent to the filing of this

lawsuit, Plaintiff was transferred to Great Meadow Correctional Facility ("Great Meadow").

Plaintiff has not filed papers in opposition to the motion despite having been given a substantial

period of time within which to do so.[2]  (Dkt. Nos. 38 and 41.)  For the reasons set forth below, the

---

[1]  Willie Lopez ("Lopez"), Supervising Counselor/Program Chairperson at Clinton was originally named as a defendant in this case.  (Dkt. No. 1 at 1-2.)  Judge McAvoy dismissed the action without prejudice as against Lopez in his Decision and Order of January 2, 2013.  (Dkt. No. 10.)  Plaintiff has not filed an amended complaint against Lopez.

[2]  In his December 23, 2013, letter to the Clerk advising of his transfer to Great Meadow (Dkt. No. 40), Plaintiff indicated that he had mailed a response to Defendants' motion for summary judgment in November.  The docket does not reflect the receipt or filing of papers in opposition to the motion.  The Court issued a Text Order on May 5, 2014, served on Plaintiff by regular mail, stating that Plaintiff had failed to file opposition papers and giving him a final extension to file papers in opposition to Defendants' motion to June 6, 2014.  (Dkt. No. 41.)  Plaintiff did not file opposition papers.

Court recommends that Defendants' motion for summary judgment be granted on mootness grounds.

## I.     BACKGROUND

Plaintiff arrived at Clinton on or about March 11 or 12, 2012.  (Dkt. No. 35-2 at 10.)  In the beginning of April 2012, Plaintiff met with the Program Committee and was assigned to work as a clinic porter doing general maintenance in the medical area.  *Id*.  A few days later, he received a letter informing him that his program assignment was being changed, and he would be attending an educational program.  *Id*. at 11.

DOCCS Directive 4808 states that "it is the goal of [DOCCS] that every inmate possess a high school diploma or obtain a High School Equivalency diploma (also known as a GED) prior to release."  (Dkt. No. 35-3 at ¶ 3.)   When an inmate is identified under Directive 4804 as having "an academic need," DOCCS requires the inmate to participate in an educational program until a GED is obtained.  *Id*. ¶ 4.  An inmate has an "academic need" if his DOCCS record does not include proof of a "verified GED, High School Diploma or IED Diploma."  *Id*. at ¶ 5.  Plaintiff's DOCCS record included no such proof, so under Directive 4804, he was required to be placed in academic programing.  *Id*. at ¶¶ 5-6; Dkt. No. 35-6 at ¶ 3.

Plaintiff claims that he attended school from kindergarten through the end of ninth grade, was placed on home schooling right around the end of ninth grade at Hempstead High School, and ultimately received a generalized educational local diploma.  (Dkt. No. 35-2 at 12.)  Both Plaintiff and Defendant Campbell attempted to obtain records from the Hempstead School District showing that Plaintiff had received a diploma but were successful in obtaining only incomplete

information that was inadequate to establish that Plaintiff had received a high school diploma or

GED. (Dkt. Nos. 1 at 8; 35-2 at 20-23; 35-3 at ¶¶ 8-9.) Plaintiff never provided Campbell with

the proof necessary to satisfy the DOCCS requirement and was required to continue to attend

classes. (Dkt. Nos. 1 at 8-9; 35-3 at ¶ 8.) Under the circumstances, Campbell had no authority to

exempt Plaintiff from the education requirement. (Dkt. No. 35-3 at ¶ 10.)

On April 19, 2012, Plaintiff sent a written request to the medical unit at Clinton for a

waiver from school programming because of a medical condition which caused him to suffer from

migraine headaches and dizziness when he engaged in periods of reading and writing. (Dkt. No. 1

at 8.) When Plaintiff saw a nurse on April 23, 2012, he was told he needed "proof of condition"

to be removed from school. *Id*. Two days later, Plaintiff made a request to his teacher, Defendant

Schwartz, and Educational Supervisor, Defendant Campbell to be removed from school pursuant

to an unspecified DOCCS directive. *Id*. Schwartz and Campbell told Plaintiff he would need to

provide proof of his education to be excused from school and that no matter what medical

condition he had, he would not be removed from school unless he was dying. *Id.*

Plaintiff saw a nurse on June 29, 2012, and was told arrangements would be made for him

to see a doctor to get him removed from school. *Id.* On July 5, 2012, Plaintiff was given a

medical pass excusing him from school by another nurse and was told the doctor would see him in

a few days. *Id.* On July 10, 2012, after Defendants Schwartz and Campbell had called the

medical unit to find out why Plaintiff could not attend school, Plaintiff saw Defendant Ferrari,

who told Plaintiff to take Motrin until he could obtain his medical records. *Id*. Ferrari informed

Plaintiff the medical pass would continue. *Id*. However, Plaintiff was forced to surrender his

medical pass or face disciplinary action on July 22, 2012, after Ferrari told Schwartz the medical pass was no longer needed and was to be revoked. *Id*. at 10.

A male nurse reissued the medical pass to Plaintiff the following day, telling Plaintiff that it should never have been revoked. (Dkt. No. 35-2 at 25.) Later the same day, Plaintiff was told by Schwartz that she had spoken with Ferrari, that Plaintiff's pass was null and void, and if he did not attend class he would be sent to the Special Housing Unit ("SHU"). *Id*. at 25. Plaintiff explained that he had been given another pass by a nurse that morning, and Schwartz said she didn't care, that if Plaintiff did not show up for school he would be sent to SHU. *Id*. Plaintiff was left with no choice but to go to school. *Id*.

Plaintiff wrote to his correctional counselor to request a program refusal on July 25, 2012, even though it could affect his chances for parole. (Dkt. No. 1 at 10.) Plaintiff felt that it was the only way to keep from suffering daily pain. *Id*. Plaintiff also wrote to Lopez, the Supervising Counselor, in accordance with DOCCS rules. *Id*. Plaintiff received written responses from Lopez and Campbell stating that he could only refuse a program at the quarterly review. *Id*. According to Plaintiff, he filed a grievance against Campbell, Schwartz, and Ferrari because there were inmates who had been allowed to refuse programs at times other than the quarterly review. *Id.* at 10-11. The August 1, 2012, decision on the grievance informed Plaintiff that because his grievance involved medical and administrative staff, it was a non-grievable issue and instructed him to address the issue with the medical supervision command. *Id*. at 11.

Plaintiff wrote to Defendant Johnson, Facility Health Services Director, on August 2, 2012, explaining the issue he was having with Ferrari and other individuals and requesting copies

of his medical files. *Id*. Johnson, who was not directly involved in Plaintiff's care and would have relied on his medical provider's medical judgment, has no recollection of receiving the letter from Plaintiff, but if she did, would have forwarded it to his medical provider. (Dkt. No 35-5 at ¶¶ 4-6.)

According to Plaintiff, when he was called down to see Ferrari on August 7, 2012, Ferrari asked Plaintiff why he was causing trouble for him and indicated that he would email Lopez and ask him to remove Plaintiff from school. (Dkt. No. 1 at 11.) As of August 9, 2012, Ferrari had not received any old medical records on Plaintiff, so he spoke with Schwartz who told him that Plaintiff never vomited in class and was getting good grades. When Plaintiff received his medical records, he learned that Ferrari had not sent the email to Lopez. *Id.* at 12. Plaintiff also discovered that Ferrari had discussed his medical status with Schwartz, who had informed Ferrari that Plaintiff never displayed any symptoms in class and received good grades. *Id.*

On August 12, 2012, Plaintiff wrote another letter to Defendant Johnson, this time to explain that Ferrari had breached confidentiality by sending his medical records to Schwartz and allowing her to comment on his medical care. *Id*. at 12. Johnson has no recollection of receiving the August 12, 2012, letter. (Dkt. No. 35-5 at ¶ 4.) Plaintiff also wrote to Clinton Deputy Superintendent Proulx ("Proulx"). (Dkt. No. 1 at 12.) Proulx responded to Plaintiff's letter by informing him that the letter would be sent to Lopez for review and action, and on August 23, 2012, Plaintiff received a letter from Lopez stating that he would not remove him from school and had done all he could do for him. *Id*. at 12-13.

Plaintiff was seen by Ferrari again on September 11, 2012.  *Id*. at 13.  According to Plaintiff, Ferrari told him that "this jail needs to keep the classroom seats full in the school."  *Id.* Plaintiff claims that Ferrari also told him that he would no longer be his assigned care provider because Plaintiff caused him too much paperwork, and he was sick of Plaintiff.  *Id.*  Plaintiff contends that Ferrari declined his request to see a specialist.  *Id.*  In his Declaration, Ferrari states that Plaintiff's examination on September 11, 2012, was terminated because Plaintiff was aggressive and uncooperative.  (Dkt. No. 35-4.)

Later in the day on September 11, 2012, Schwartz told Plaintiff if he did not complete all of the assignments she issued, she would write a disciplinary ticket and have him sent to SHU.  (Dkt. No. 1 at 13.)  Plaintiff contends he was thereafter forced to endure great pain to avoid disciplinary actions.  *Id.*  However, Schwartz claims she never noticed Plaintiff experiencing any medical symptoms such as nausea and vomiting while in class, and Plaintiff's library book check-out history showed he had consistently borrowed books from the Clinton library.  *Id*. at ¶¶ 6, 11.

After four complaints of migraines by Plaintiff during September of 2012, Ferrari ordered an MRI and prescribed the migraine medication Imitrix for Plaintiff.  (Dkt. No. 35-4 at ¶ 11.) Plaintiff's November 23, 2012, MRI was normal except for a mild mucosal thickening involving the right maxillary sinus that was not relevant to Plaintiff's complaints of migraines when reading.  *Id*. at ¶ 13.  In Ferrari's professional medical judgment, there was no objective medical reason to explain Plaintiff's migraines with nausea and vomiting when reading.  *Id*. at ¶ 15.  Under the DOCCS Directive, a waiver of the educational requirement can only be made for medical reasons

based on objective medical findings, and it was Ferrari's professional medical opinion that

Plaintiff did not have a medical condition for which a waiver was required. *Id.* at ¶¶ 16-17.

After a series of letters to the Deputy Assistant of Programs, and a period of being moved

in and out of the educational program, Plaintiff was removed from the program on November 7,

2012. (Dkt. No. 35-2 at 27-28.) Although Plaintiff was told the removal could not be permanent

without the outstanding issues being legally resolved, Plaintiff had not been required to return to

the program as of his deposition on July 25, 2013. *Id.*

## II.    MOOTNESS

"In order for a federal court to retain jurisdiction over a case, an actual controversy must

exist 'at all stages of review, not merely at the time the complaint is filed.'" *Prins v. Coughlin*, 76

F.3d 504, 506 (2d Cir. 1996) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)) (citations

omitted); *see also County of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) ("Under

the 'general rule' of mootness, courts' subject matter jurisdiction ceases when an event occurs

during the course of the proceedings or on appeal that makes it impossible for a court to grant any

effectual relief whatever to a prevailing party.") (citations and internal quotation marks omitted).

All of the Defendants are officials at Clinton, and all of the actions of which Plaintiff

complains occurred at Clinton. (Dkt. No. 1.) Plaintiff has made it clear in his Complaint that he

is seeking no monetary damages from Defendants in his lawsuit. (Dkt. No. 1 at 15.) Rather, he is

seeking issuance of a mandatory injunction forcing Defendants to properly resolve the civil rights

violations described in his Complaint and, at the discretion of the Court, imposing disciplinary

action against Defendants to revoke or suspend the professional permits or licenses they possess to effect their duties.[3]  *Id.* at 6, 15.

Plaintiff was transferred from Clinton to Great Meadow after the commencement of this action.  (Dkt. No. 40.)  "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."  *Shepherd v. Goord*, 662 F.3d 603,  (2d Cir. 2011) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). The rationale for the rule is that with a prisoner's transfer, "the problem sought to be remedied has ceased, and . . . there is no reasonable expectation that the wrong will be repeated."  *Prins*, 76 F.3d at 506 (citation and internal quotation marks omitted).  "Speculative, remote, or future injury is not the province of injunctive relief."  *Funches v. Fischer*, No. 1:11-CV-0869 (GTS/CFH), 2014 WL 1312048, at *9, 2014 U.S. Dist. LEXIS 42814, at *28-29 (N.D.N.Y.  Mar. 31, 2014) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 11-112 (1983)).

---

[3]  Even if DOCCS or other New York State officials with the authority to discipline Defendants or commence administrative proceedings to revoke or suspend their professional licenses were named as parties to this action, the District Court could not properly order them to do so.  *See Street v. Rodriguez*, No. 12-13995 (LPZ/PJK), 2014 WL 840083, at *5, 2014 U.S. Dist. LEXIS 27376, at *13-14 (E.D. Mich. Mar. 4, 2014) (plaintiff's argument that his claims were not moot because in addition to seeking injunctive relief, he was also asking for "administrative sanctions" against defendants was rejected by the court because: (1) officials who would have to carry out requested sanctions were not parties; and (2) directing officials to impose sanctions on employees or specifying the conditions under which they are employed would unnecessarily impose on prison operations and constitute an inappropriate use of the court's equity powers) (citing *Ross v. Reed*, No. 1:13-cv-143, 2013 WL 1326947, at *2, 2013 U.S. Dist. LEXIS 44697, at *5-6 (S.D. Ohio, W.D. Mar. 5, 2013)) ("[T]o the extent plaintiff seeks injunctive relief in the form of an order requiring that disciplinary . . . proceedings be initiated against the defendants, the complaint fails to state an actionable claim" because "[t]he Court has no authority under § 1983 to direct the . . . police department to initiate any disciplinary proceedings against its employees . . .").

According to Plaintiff, who before being transferred to Clinton was confined in Downstate, Attica, and Auburn Correctional Facilities, Clinton was the only correctional facility that required him to participate in educational programing.  (Dkt. No. 35-2 at 13-14.) Furthermore, as of November 7, 2012, Plaintiff was removed from educational programming at Clinton.  (Dkt. No.  35-2 at 27-28.)  Given Plaintiff's departure from Clinton, there is no reasonable expectation that the wrongs alleged against Defendants, both with regard to the education programing and Ferrari's allegedly improper disclosure of information regarding Plaintiff's medical condition to Schwartz, will be repeated by them.  Moreover, given that Clinton is the only facility in which Plaintiff was required to participate in educational programming, and he was eventually removed from the program at Clinton, concern that he might be required to participate in educational programming in the future is speculative and not the province of injunctive relief.

In light of the foregoing, the Court recommends that Defendants' motion for summary judgment on mootness grounds be granted.

**ACCORDINGLY**, it is hereby,

**RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**; and it is

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: June 19, 2014
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge


Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Edward C. FUNCHES, Plaintiff,
v.
Brian FISCHER, Comm'r of N.Y. State Dep't of Corr.
and Cmty. Supervision; Daniel F. Martuscello, Superintendent of Coxsackie Corr. Facility; J. Meigs,
Lieutenant at Coxsackie Corr. Facility; Slaven, Sergeant at Coxsackie Corr. Facility; John Doe, Corr.
Officer at Coxsackie Corr. Facility; and Jane Doe,
Corr. Officer at Coxsackie Corr. Facility, Defendants.

No. 1:11–CV–0869 (GTS/CFH).
Signed March 31, 2014.

Edward C. Funches, Bronx, NY, pro se.

Hon. Eric T. Schneiderman, Colleen D. Galligan,
Esq., Assistant Attorney General, of Counsel, Albany,
NY, for Defendants.

### DECISION and ORDER

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* disability-discrimination action filed by Edward C.
Funches ("Plaintiff") against the six above-captioned
New York State correctional employees ("Defendants"), are the following motions: (1) Defendants'
motion for summary judgment (Dkt. No. 31); (2)
Defendants' motion to amend their Answer (Dkt. No.
31); (3) Plaintiff's cross—motion for summary judgment (Dkt. No. 38); and (4) Plaintiff's cross-motion to
amend his Complaint (Dkt. No. 45). For the reasons
set forth below, Defendants' motion for summary
judgment is granted; Defendants' motion to amend
their Answer is granted; Plaintiff's crossmotion for

summary judgment is denied; and Plaintiff's
cross-motion to amend his Complaint is denied.

### I. RELEVANT BACKGROUND

#### A. Plaintiff's Complaint

Generally, in his Complaint, Plaintiff alleges that
Defendants failed to appropriately accommodate his
paraplegic disability (which confines him to a
wheelchair) in the following three ways: (1) on April
30, 2011, they prevented him from visiting his "beloved" brother at Coxsackie Correctional Facility <sup>FN1</sup>
by not repairing a broken wheelchair lift at the facility
(until May 5, 2011); (2) on May 7, 2011, they searched
both his person and the upper part of his wheelchair
before his entrance to the facility's visitation room,
resulting in an "edgy" visit with his brother; and (3) on
June 25, 2011, they prevented him from attending a
Family Day Festival with his brother by holding the
event in the facility's gymnasium, which was not
wheelchair accessible. (*See generally* Dkt. No. 1 [including attachments].) <sup>FN2</sup> Because this Decision and
Order is intended primarily for the review of the parties, the Court will not recite in detail the remaining
factual allegations of Plaintiff's Complaint, but will
refer the reader to the Complaint in its entirety. (*Id.*)

> FN1. From Westlaw and the New York State
> Department of Corrections and Community
> Service's Inmate Locator Service, it appears
> that, at the time in question, Plaintiff's
> brother, Trevis Funches, was serving a sentence for a conviction of, *inter alia,* First
> Degree Robbery, Second Degree Attempted
> Robbery, Second Degree Criminal Possession of a Weapon, and Third Degree Criminal Possession of a Weapon. Furthermore,
> from Westlaw, the Bureau of Prisons' Inmate
> Locator Service, and the federal judiciary's

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

Public Access to Court Electronic Records ("PACER") service, it appears that, before the time in question, Plaintiff, a/k/a "Jab," had been convicted and incarcerated for racketeering, violent crimes in aid of racketeering (including murder), auto theft, and distributing narcotics.

FN2. *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

Based on these factual allegations, Plaintiff asserts two claims against Defendants: (1) Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and (2) Defendants violated the Rehabilitation Act, 29 U.S.C. § 794(a). (*Id.*) FN3 As remedies for these violations, Plaintiff seeks $3,000,000 in damages and an injunction ordering Defendants to permit Plaintiff to visit his brother. (*Id.*)

FN3. In addition, in his Complaint, Plaintiff cites 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments. (Dkt. No. 1, at 1.) However, even when construed with the utmost of special liberality, the Court can perceive no factual allegations plausibly (or even conclusorily) suggesting such a claim. (*Id.*) *See also, e.g.,* Shariff v. Coombe, 655 F.Supp.2d 274, 301 (S.D.N.Y.2009) ("Because the disabled are not a suspect or quasi-suspect class, rational basis scrutiny-that the disparity be rationally related to a legitimate governmental purpose-is the appropriate level of review in such cases."). The Court notes that Defendants purposely omit this claim for their recitation of Plaintiff's claims, explaining that it is not actionable. (Dkt. No. 31, Attach. 13, at 3, 12 [attaching pages "1" and "10" of Defs.' Memo. of Law].) However, in his response to Defendants' motion for summary judgment, Plaintiff

does not explain how this claim is actionable. (Dkt. No. 36, Attach.2.) For all of these reasons, the Court does not list such a claim among the claims that Plaintiff asserts.

**B. Parties' Briefing on Defendants' Motion for Summary Judgment**

**1. Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert four arguments. (Dkt. No. 31, Attach. 13 [Defs.' Memo. of Law].)

First, argue Defendants, as a threshold matter, Plaintiff's Complaint should be dismissed for failing to allege facts plausibly suggesting, and/or adduce admissible record evidence establishing, a claim under either the ADA or Rehabilitation Act. (*Id.* at 5–11 [attaching pages "3" through "9" of Defs.' Memo. of Law].) Specifically, Plaintiff has failed to allege and/or establish that (a) there was any deliberate discrimination by Defendants against him because of his disability, (b) there was any significantly adverse or disproportionate impact on Plaintiff compared to other groups of individuals (based on the acts in question), and (c) there was any lack of meaningful access to a government resource or any plausible method of remedying that lack of meaningful access, especially given the fact that the wheelchair lift was broken and being repaired, and that the cost of renovating the gymnasium (the only building in which Family Day Festival could have been held) was unduly burdensome to the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Id.*)

***2** Second, argue Defendants, to the extent Plaintiff asserts claims against the individual Defendants under the ADA and Rehabilitation Act, those claims should be dismissed, because there is no individual liability under either of those statutes. (*Id.* at 11–12 [attaching pages "9" and "10" of Defs.' Memo.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

of Law].)

Third, argue Defendants, Plaintiff's claim against Defendant "Jane Doe" should be dismissed because (a) he has failed to identify her, and (b) his allegations against her state no identifiable claim. (*Id.* at 12 [attaching page "10" of Defs.' Memo. of Law].)

Fourth, argue Defendants, Plaintiff's claim for injunctive relief should be dismissed as moot because his brother is no longer incarcerated at Coxsackie Correctional Facility and is now at Eastern Correctional Facility. (*Id.*)

**2. Plaintiff's Opposition Affidavit**

Generally, in his opposition affidavit, Plaintiff asserts five arguments. (Dkt. No. 36, Attach. 2 [Plf.'s Opp'n Affid.].)

First, argues Plaintiff, he was intentionally discriminated against and subjected to disparate treatment, because, during his attempted visit on April 30, 2011, Defendants Meigs, Slaven and Jane Doe told Plaintiff that, because the wheelchair lift was broken, the only way Plaintiff could enter the facility would be to crawl up the stairs while personnel carried up his wheelchair. (*Id.* at ¶¶ 1, 7.)

Second, argues Plaintiff, Defendants' evidence that the cost of renovating the gymnasium was unduly burdensome is immaterial and/or unpersuasive, because (a) Plaintiff "meets the essential eligibility requirements to have participated in the Family Day Festival and visit of his beloved brother," (b) Defendants could have accommodated his disability by allowing him to enter the gymnasium through a ground-level door or using a "Portable ramp" in the gymnasium (as Great Meadow Correctional Facility has done), and (c) both Great Sing Sing Correctional Facility and Auburn Correctional Facility are ADA compliant. (*Id.* at ¶¶ 2–3, 5–6, 8.)

Third, argues Plaintiff, the fact that his brother no longer resides at Coxsackie Correctional Facility does not render his claims moot because DOCCS has an "ongoing obligation" under the ADA, and his brother might be transferred back to Coxsackie Correctional Facility at some point in the future. (*Id.* at ¶¶ 2–3, 12.)

Fourth, argues Plaintiff, in addition to the other conditions he alleges, the bathroom adjacent to the visitation room was not wheelchair accessible, which caused him to cut short his visit to his brother "on many occasions." (*Id.* at ¶¶ 4, 9.)

Fifth, argues Plaintiff, he has now identified Jane Doe as "Correctional Officer Donnelly," and would like to amend his Complaint accordingly. (*Id.* at ¶¶ 1, 15.)

**C. Parties' Briefing on Defendants' Motion to Amend Their Answer**

Generally, in their memorandum of law, Defendants request that they be granted leave to amend their Answer to include a defense in Paragraph 15 (asserting that it would pose an undue burden on DOCCS to renovate the gymnasium at Coxsackie Correctional Facility to make it wheelchair accessible) and a defense in Paragraph 16 (asserting that the temporary malfunction of the wheelchair lift did not constitute a discriminatory practice). (Dkt. No. 31, Attach. 13, at 13–14 [attaching pages "11" and "12" of Defs.' Memo. of Law]; Dkt. No. 31, Attach. 1, at ¶¶ 13–15; *cf.* Dkt. No. 32, Attach. 1.) Defendants argue that they should be granted such leave because (1) the defenses arose out of the conduct, transaction or occurrence set in Plaintiff's Complaint, Defendants did not realize the need to assert the defenses until they recently received materials from Affirmative Action Administrator Lucy Buther and Facilities Planner Jerry Lindecke, and (3) Plaintiff has known, or should have known, of the facts relied on by the defenses, especially given his knowledge of the age of Coxsackie Correctional Facility as compared to the other prisons he has visited. (*Id.*)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

**\*3** Generally, in response, Plaintiff argues that leave to amend should be denied because, although "Defendants[ ] claim that Plaintiff is not surprise[d] by these [amendments] ... [,] [q]uite frankly, Plaintiff is indeed surprise[d] and will be prejudice[d] by these amendments." (Dkt. No. 36, Attach. 2, at ¶ ¶ 15–17 [Plf.'s Opp'n Affid.].)

**D. Parties' Briefing on Plaintiff's Cross–Motion for Summary Judgment**

Generally, in his memorandum of law, Plaintiff asserts three arguments: (1) in focusing on an un-due-burden defense, Defendants admit that (a) Plaintiff is a qualified individual with a disability under the ADA, (b) they denied him access to the facility's visitation room on April 30, 2011, by not ensuring that the visitation room's wheelchair lift was working, and by requiring him to crawl up the steps if he wanted to enter it (which, in addition, constituted an "atypical and significant hardship"), (c) they harassed him by searching his person and his wheelchair upon entrance to the facility on May 7, 2011, and (d) they deprived him of participation in the Family Day Festival on June 25, 2011, by not making the gymnasium wheelchair accessible; (2) Defendants' undue-burden defense is without merit because, rather than arguing that no reasonable accommodations are possible (due to the gymnasium's structure and age), Defendants argue merely that they "do not want to spend the [\$750,000 necessary] to implement reasonable accommodations," which is "inconsistent with the premise of [the] A.D.A."; and (3) as a result, the record is devoid of any evidence establishing that the discrimination that Plaintiff experienced was *not* intentional. (Dkt. No. 38, Attach. 3 [Plf.'s Memo. of Law].) In support of his motion, Plaintiff submits a Statement of Material Facts that is devoid of any supporting record citations. (Dkt. No. 39.)

Generally, in their opposition memorandum of law, Defendants assert two arguments: (1) Plaintiff's motion for summary judgment should be denied be-

cause it is untimely and he has offered no excuse for that untimeliness; (2) in the alternative, Plaintiff's motion for summary judgment should be denied because he has failed to establish that (a) he was denied a reasonable accommodation when he attempted to visit his brother on April 30, 2011, and (b) Defendants were required the modify the gymnasium based on the burden imposed by that modification. (Dkt. No. 41, Attach. 2 [Defs.' Opp'n Memo. of Law].) Defendants support their denials of various of Plaintiff's factual assertions with accurate record citations. (Dkt. No. 41, Attach.1.)

Generally, in his reply declaration, Plaintiff asserts three arguments (in addition to repeating previously asserted arguments): (1) Plaintiff's motion for summary judgment was not untimely because he sought, and was granted, an extension of the deadline to file a response to Defendants' motion for summary judgment; (2) if the Court finds that Plaintiff's motion is untimely, then it should also find that Defendants' proposed Amended Answer is untimely, because Plaintiff would be prejudiced by Defendants' new affirmative defenses; and (3) even if the Court believes that a fact is not genuinely in dispute, it may refrain from granting summary judgment based on that fact. (Dkt. No. 44 [Plf.'s Reply Decl.])

**E. Parties' Briefing on Plaintiff's Cross–Motion to Amend His Complaint**

**\*4** Generally, in support of his cross-motion to amend his Complaint, Plaintiff argues that (1) he is "within the statutory time limitation to file a 42 USC § 1983 action," and (2) Defendants "would not be prejudiced by responding to the additional claim[s] because they relate back to the initial claims in the complaint." (Dkt. No. 45, at 1.) Plaintiff's cross-motion does not describe his proposed amendments. (*Id.* at 1–12.)

While the Court declines to conduct a tedious comparison of Plaintiff's proposed Amended Complaint and his original Complaint, it notes that gener-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

ally, liberally construed, Plaintiff's Amended Complaint appears to attempt to, *inter alia,* do the following: (1) add Plaintiff's brother, Trevis L. Funches, as a plaintiff; (2) replace Defendant Jane Doe with Defendant C.O. Donnelly; (3) drop Defendant John Doe as a Defendant; (4) assert numerous new factual allegations; (5) add some sort of Eighth and/or Fourteenth claim under 42 U.S.C. § 1983, arising from the exclusion of Trevis' "common law wife, Felicia Bowens" from the Family Day Festival; (6) add a claim of disability discrimination under the Fourteenth Amendment and 42 U.S.C. § 1983, arising from the events of April 30, 2011, and June 25, 2011; and (7) add a claim of religious discrimination under the Religious Land Use and Institutionalized Persons Act of 2000 and the Free Exercise Clause of the First Amendment, because the Family Day Festival occurred "in the Holy month of Ramadan." (Dkt. No. 45.)

Generally, in opposition to Plaintiff's cross-motion, Defendants assert the following four arguments: (1) Trevis Funches' motion to amend should be denied for lack of standing; (2) the motion to amend should be denied as untimely, in large part because the facts giving rise to the proposed claims was known to Plaintiff long before he made his motion, and no excuse is offered for his delay; (3) the motion to amend should be denied because many of the claims asserted in Plaintiff's proposed Amended Complaint are not sufficiently related to the claims in the original Complaint; and (4) the motion to amend should be denied as futile, because Plaintiff has pled himself out of court based on the exhaustion-of-administrative-remedies requirement, and Plaintiff's allegations regarding C.O. Donnelly's search of his wheelchair are so vague as to not be actionable. (Dkt. No. 47 [Defs.' Opp'n Memo. of Law].)

**II. GOVERNING LEGAL STANDARDS**

**A. Motion for Summary Judgment**

Under Fed.R.Civ.P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323–24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed.R.Civ.P. 56(a),(c),(e).

**\*5** A dispute of fact is "genuine" if "[the record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson,* 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) [citation omitted]. As the Supreme Court has famously explained, "[The non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986) [citations omitted].

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

**B. Motion to Amend a Pleading**

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

Rule 15 of the Federal Rules of Civil Procedure governs motions for leave to amend a "pleading," which includes both a complaint and an answer. Fed.R.Civ.P. 15(a); Fed.R.Civ.P. 7(a). Pursuant to Fed.R.Civ.P. 15, leave to amend a complaint or answer should be freely given "when justice so requires." Fed.R.Civ.P. 15(a)(2); *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Manson v. Stacescu,* 11 F.3d 1127, 1133 (2d Cir.1993). Nevertheless, such leave to amend is not automatic; and a court may deny a motion for leave to amend where there is an apparent or declared reason not to grant leave to amend, "such as [ 1 ] undue delay, bad faith or dilatory motive on the part of the movant, [2] repeated failure to cure deficiencies by amendments previously allowed, [3] undue prejudice to the opposing party by virtue of the allowance of the amendment, [4] futility of amendment, etc." *Foman,* 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous.,* 608 F.2d 28, 42 (2d Cir.1979).

Moreover, where a motion to amend a pleading is filed after the deadline for such motions established by a scheduling order, the movant must show good cause for the failing to comply with the scheduling order. See *Parker v. Columbia Pictures Indus.,* 204 F .3d 326, 340 (2d Cir.2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."); Fed.R.Civ.P. 16(b)(4), (f)(C) ("A schedule may be modified only for good cause and with the judge's consent.... On motion or its own, the court may issue any just orders ... if a party or its attorney ... fails to obey a scheduling or other pretrial order.").

**C. Legal Standards Governing Plaintiff's Claims**

Because Defendants have, in their memoranda of law, accurately recited the legal standards governing Plaintiff's ADA and Rehabilitation Act claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which

(again) is intended primarily for the review of the parties, but will merely refer the reader to the relevant portions of those memoranda. (*See* Dkt. No. 31, Attach. 13, at 5–12 [attaching pages "3" through "10" of Defs.' Memo. of Law]; Dkt. No. 41, Attach. 2, at 8–11 [attaching pages "6" through "9" of Defs.' Opp'n Memo. of Law].)

**III. ANALYSIS**

**A. Procedural Errors in Plaintiff's Motion Papers**

**\*6** As a threshold matter, the Court notes that there are two procedural errors in Plaintiff's motion papers.

First, Defendants assert 56 paragraphs of factual assertions in their Statement of Material Facts, each of which is supported by an accurate record citation. (Dkt. No. 31, Attach.12.) In response, Plaintiff submits a response to the Statement of Material Facts, which does not contain matching numbered paragraphs (containing only eight paragraphs), and does not support denials with accurate record citations. (Dkt. No. 36, Attach.1.) Ordinarily, this would result in a finding that Plaintiff has admitted to the facts asserted in Defendants' Statement of Material Facts. N.D.N.Y. 7. 1(a)(3).

However, Plaintiff is proceeding *pro se,* and Defendants cannot certify that they attached the District's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" to their Notice of Motion, as represented therein. (*Compare* Dkt. No. 31, at 2 *with* Dkt. No. 50.) Such a Notification was necessary, because the brief synopsis of the notice that Defendants provided Plaintiff was not sufficiently specific with regard to the consequences of failing to deny Defendants' factual assertions in matching numbered paragraphs supported by accurate record citations. See *Cruz v. Church,* 05–CV–1067, 2008 WL 4891165, at *2–3 (N.D.N.Y. Nov. 10, 2008)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

(Suddaby, J.). Moreover, it does not appear from the docket sheet that Plaintiff received a courtesy copy of either the Court's Local Rules of Practice or the District's *Pro Se* Handbook. (*See generally* Docket Sheet.) Finally, from a review of the federal judiciary's Public Access to Court Electronic Records ("PACER") service, it appears that, before the time in question, Plaintiff had only minimal experience opposing a motion for summary judgment filed by DOCCS in a federal civil rights action. *See Funches v. Reich,* 97–CV–7611, Affid. in Support of Plf.'s Motion to Deny Defs.' Motion for Summary Judgment (S.D.N.Y. filed June 1, 1998).

For all of these reasons, the Court will not deem admitted the properly supported facts set forth in Defendants' Statement of Materials Facts that Plaintiff has not controverted in matching numbered paragraphs supported by accurate record citations. For similar reasons, the Court will not deny Plaintiff's cross-motion for summary judgment merely because he failed to support the factual assertions in his Statement of Material Facts with accurate record citations (or any record citations). (Dkt. No. 39.)

Second, the deadline for motions for summary judgment and motions to amend pleadings in this action was January 18, 2013. (Dkt. No. 16, at 2–4; Dkt. No. 27; Text Order filed Dec. 17, 2012; Text Order filed Jan. 7, 2013.) [FN4] In compliance with these deadlines, Defendants filed their combined motion for summary judgment and motion to amend their Answer on January 18, 2013. (Dkt. No. 31.)

> [FN4]. The deadline for motions to amend pleadings was actually February 1, 2012; however, due to an ambiguity in the Uniform Pretrial Scheduling Order, the Court will liberally construe that deadline as the same as the deadline for other motions (other than motions regarding venue and jurisdiction). (Dkt. No. 16, at 2.)

It is important to note that, in addition to seeking the dismissal of Plaintiff's Complaint based on evidentiary insufficiencies, Defendants' motion sought dismissal of Plaintiff's Complaint based on pleading deficiencies. (Dkt. No. 31, Attach. 13, at 5–12 [Defs. Memo. of Law, attaching pages "3" through "10," arguing that Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted, and/or failure to establish a claim].) [FN5]

> [FN5]. To the extent that a defendant's motion for summary judgment under Fed.R.Civ.P. 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968) (citations omitted); *accord, Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ( "This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

**\*7** Under the Local Rules of Practice for this Court, any competing request by Plaintiff for relief or order similar to that requested by Defendants would have been a cross-motion. N.D.N.Y. L.R. 7.1(c). Certainly, Plaintiff's motion for summary judgment fell into this category. In addition, Plaintiff's motion to amend his Complaint under Fed.R.Civ.P. 15 fell into this category, because it sought to correct the pleading defects identified in Defendants' motion, which sought dismissal of Plaintiff's claims with prejudice based on a failure to state a claim. [FN6]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN6. *See Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir.2007) (characterizing plaintiff's motion to amend, filed in attempt to cure defects identified in defendants' motion to dismiss under Fed.R.Civ.P. 12[b][6] as a "cross-motion"); *accord, Lesperance v. Cnty. of St. Lawrence,* 10–CV–1273, 2011 U.S. Dist. LEXIS 92439, at *1–2 (N.D.N.Y. Aug. 18, 2011); *Deluca v.. AccessIT Group, Inc.,* 695 F.Supp.2d 54, 57, 64 (S.D.N.Y.2010).

Moreover, under the Local Rules of Practice for this Court, Plaintiff's cross-motion had to be combined with his response to Defendants' motion. N.D.N.Y. L.R. 7.1(c) ("A party may file and serve a cross-motion ... at the time in files and serves its opposition papers to the original motion ... If a party makes a cross-motion, it must join its cross motion brief with its opposition brief....").

Here, according to the briefing schedule established by the Court, Plaintiff's response to Defendants' motion (and Plaintiff's cross-motion) was due on March 4, 2013. (*See* Text Notice filed Jan. 18, 2013; Text Order filed Feb. 1, 2013.) Plaintiff compliantly filed that response on February 21, 2013. (Dkt. No. 36.)

However, Plaintiff did not combine his cross-motion for summary judgment with that response. (Dkt. No. 38.) Nor did he combine his cross-motion to amend with that response. (Dkt. No. 45.) Plaintiff's briefing practice has resulted in the piecemeal briefing of the pending motions and cross-motions, enlarging without permission the number of briefs from three (*see* N.D.N.Y. L.R. 7.1[c]) to seven (*see* Dkt. No. 31, Attach. 13; Dkt. No. 36, Attach. 2; Dkt. No. 38, Attach. 3; Dkt. No. 41, Attach. 2; Dkt. No. 44; Dkt. No. 45; Dkt. No. 47), and causing the parties to confuse rather than refine the legal and factual issues before the Court.

However, out of an extension of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court will overlook these particular briefing errors (although the untimeliness of Plaintiff's cross-motion for summary judgment and his cross-motion to amend, discussed below in Parts III.D. and III.E. of this Decision and Order, is another matter).

**B. Defendants' Motion for Summary Judgment**

After carefully considering the matter, the Court grants Defendants' motion for summary judgment for each of the reasons stated in their memorandum of law. *See, supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds only six brief points.

First, based on the current record, it is uncontroverted that the wheelchair lift at the front entrance to Coxsackie Correctional Facility was inoperable for, *at most,* a period of 35 days (i.e., from April 28, 2011, to June 2, 2011). (Dkt. No. 31, Attach. 4 [repair records].) During the entirety of that period, Defendants made rather diligent efforts to repair the wheelchair lift. (*Id.; see also* Dkt. No. 31, Attach. 11, at ¶ 9; Dkt. No. 31, Attach. 10, at ¶ 3.) [FN7] Moreover, despite the inoperability of the lift, Plaintiff was able to successfully visit his brother on May 7, 2011, with the assistance of Correctional Officer Dancy and others. (Dkt. No. 1, at ¶ 30; Dkt. No. 36, Attach. 3, at ¶¶ 8–9.) The Court notes that, based on the current record, it is clear that Defendants (1) did not cause the problem with the lift, (2) regularly inspected the lift, (3) promptly requested service upon learning of the problem, and (4) offered to carry Plaintiff's wheelchair up the stairs while assisting him make his own way up the stairs. (Dkt. No. 31, Attach. 4; Dkt. No. 31, Attach. 11, at ¶¶ 7–8; Dkt. No. 31, Attach. 10, at ¶ 3; Dkt. No. 31, Attach. 3, at 57; Dkt. No. 36, Attach. 2, at ¶ 1; Dkt. No. 36, Attach. 3, at 2, ¶ 9; Dkt. No. 36, Attach. 3, at 12; Dkt. No. 1, at ¶ 12.) [FN8] Under these circumstances, the Court simply cannot find that the temporary inoperability of the wheelchair lift (which was outside of Defendants' control) gives rise to a claim under either

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

the ADA or Rehabilitation Act. *Cf. Midgett v. Tri–County Metro. Transp. Dist .,* 254 F.3d 846, 849–50 (9th Cir.2001) (finding that, in the context of public bus transportation, "isolated or temporary problems caused by [wheelchair] lift malfunctions are not violations of the ADA").

> FN7. For example, Coxsackie Correctional Facility promptly requested service of the wheelchair lift upon learning of its malfunction on April 28, 2011. (Dkt. No. 31, Attach. 4, at 4, 8.) An agent of the facility signed a repair authorization on April 29, 2011. (*Id.* at 5.) The wheelchair lift was repaired by service technician by May 5, 2011. (*Id.* at 6–8.) However, the wheelchair lift broke again by May 6, 2011, and it was shipped out for repair. (*Id.* at 1–2.) Repair was completed by June 2, 2011. (*Id.* at 9.)

> FN8. While Defendants refused to let people try to carry Plaintiff up the stairs at the facility on April 30, 2011, they explained they did so out of a concern for Plaintiff's safety, as well as the liability to which Defendants might be subjected if Plaintiff fell and/or was dropped. (Dkt. No. 31, Attach. 3, at 32–34; Dkt. No. 31, Attach. 3, at 58; cf. Dkt. No. 31, Attach. 11, at ¶ 2 [mentioning safety as factor in modification of facility].)

**\*8** Second, Defendants have adduced admissible record evidence that the financial burden of making Coxsackie Correctional Facility's gymnasium compliant with the ADA was between approximately $700,000 and $750,000. (Dkt. No. 31, Attach. 11, at ¶¶ 10–16; Dkt. No. 31, Attach. 10, at ¶¶ 7, 12.) Plaintiff has not controverted that evidence with any admissible record evidence. (*See generally* Dkt. No. 36; *see also, infra,* the third reason in this part of the Decision and Order.) Moreover, the purpose of the accommodation at issue was to permit any wheelchairbound family members of inmates to attend a Family Day

Festival at the facility on about four days per year. (Dkt. No. 31, Attach. 10, at ¶ 10; Dkt. No. 31, Attach. 11, at 5–6.) FN9 The Court notes that no record evidence exists establishing that any wheelchair-bound family members are entitled to access the prison gymnasium the other 361 days each year (or even any of the four days in question if the Festival were eliminated from the prison's calendar due to cost and the inability to hold the Festival in any other facility at Coxsackie Correctional Facility). (Dkt. No. 31, Attach. 10, at ¶¶ 10–11; Dkt. No. 31, Attach. 11, at ¶ 6.) Under the circumstances, the Court cannot help but find that the expense in question would be an undue one to New York State (whose tax dollars appear otherwise needed at its maximum-security prisons). *See* 42 U.S.C. § 12111(10)(B) (listing "the nature and cost of the accommodation," "the overall financial resources of the facility," "the impact ... of such accommodation upon the operation of the facility," and "the type of operation ... of the covered entity" among the factors to be considered in determining whether the accommodation would impose an undue hardship under the ADA); *Dorsey v. Sullivan,* 10–CV–0744, 2013 WL 4776344, at \*7–8 (W.D.N.Y. Sept. 3, 2013) (accepting defendants' argument that replacing all standard door knobs with lever door openers in Livingston Correctional Facility was unnecessary and cost prohibitive, such that offering the accommodation would have posed an undue hardship on the correctional facility's operation).

> FN9. The Court notes that DOCCS does not place wheelchair-bound inmates in the general population at Coxsackie Correctional Facility; rather, those inmates are placed in other, wheelchair-accessible facilities. (Dkt. No. 31, Attach. 10, at ¶¶ 8–9.)

Third, for the sake of brevity, the Court will not linger on the minimal materiality of Plaintiff's affidavit testimony regarding the existence of a ground-level door to the gymnasium, whether a "portable ramp" would have complied with the ADA (or even a feasi-

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

ble avenue of travel for his wheelchair), and whether the facilities at Great Meadow Correctional Facility, Sing Sing Correctional Facility and Auburn Correctional Facility comply with the ADA is of minimal materiality, under the circumstances. (Dkt. No. 36, Attach. 2, at ¶¶ 5–6, 8.) More important is the fact that such testimony is so lacking in any indication of personal knowledge as to render the assertions speculative and/or conclusory. The Court notes that the affidavit of Plaintiff's brother is similarly devoid of personal knowledge of those three facts. (*See generally* Dkt. No. 36, Attach. 3.)

**\*9** Fourth, the fact that Plaintiff's brother *migh* t somehow return to Coxsackie Correctional Facility at some point in the future is too speculative to shield his injunction request from a mootness challenge. Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12 (1983); *see also Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). Moreover, while Defendant Fischer is responsible for generally overseeing Eastern Correctional Facility (as well as Coxsackie Correctional Facility), no showing (or even allegation) has been made that the violations are likely to reoccur at Eastern Correctional Facility.

Fifth, Plaintiff's late-blossoming claim about the allegedly noncompliant bathroom in the visitation room at Coxsackie Correctional Facility (Dkt. No. 36, Attach. 2, at ¶¶ 4, 9) is rejected on each of two alternative grounds: (1) that claim is late-blossoming (because it does not appear in his Complaint, and discovery in this action has ended); and (2) that claim is unsupported by the admissible record evidence, which establishes that the bathroom in the facility's main corridor adjacent to the visitation room is ADA compliant (*see, e.g.,* Dkt. No. 31, Attach. 10, at ¶ 5; Dkt. No. 31, Attach. 11, at ¶ 3).

Sixth, and finally, out of special solicitude to Plaintiff as a *pro se* civil rights litigant, the Court is inclined to accept Plaintiff's identification of Defendant Jane Doe as "Correctional Officer Donnelly" even thought that identification is incomplete (lacking a first name) and belated.[FN10] However, such an extension of special solicitude would not change the outcome of Defendants' motion, given the other defects in Plaintiff's claims against C.O. Donnelly, as described above. To these defects the Court adds only that, based on the current record evidence, it is undisputed that visitors and their metal wheelchairs may be searched, including by hand frisk, for contraband to maintain security (and that visitors with criminal histories may be subjected to additional restrictions). (Dkt. No. 32, Attach. 2, at 2–5, ¶¶ III.E., IV.B., V.B., VI.A.)

> FN10. For example, Plaintiff offered this identification for the first time on February 21, 2013 (Dkt. No. 36, Attach. 2; Dkt. No. 36, Attach. 4, at 1)-more than three months after the deadline for discovery expired on November 15, 2012, and more than a month after the deadline for motions to amend expired on January 18, 2013. (Dkt. No. 16, at 2–4; Dkt. No. 27; Text Order filed Dec. 17, 2012; Text Order filed Jan. 7, 2013.)

For all of these reasons, the Court grants Defendants' motion for summary judgment.

## C. Defendants' Motion to Amend Their Answer

After carefully considering the matter, the Court grants Defendants' to amend their answer for each of the reasons stated in their memorandum of law. *See, supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds only the following analysis.

For the sake of brevity, the Court will assume that the defense asserted in Paragraph 16 of Defendants' proposed Amended Answer (asserting that the tem-

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

porary malfunction of the wheelchair lift did not con-
stitute a discriminatory practice) is indeed an affirm-
ative defense that needs to be pled in order to be relied
on in a motion for summary judgment, although that
fact is not entirely clear to the Court. Rather, it appears
that the issue presented by Paragraph 16 is an issue on
which Plaintiff may bear the burden. *See Riel v. Elec.
Data Sys. Corp., 99 F.3d 678, 682 (5th Cir.1996)*
("[D]iscrimination is defined to be a failure to im-
plement reasonable accommodations, suggesting that
the plaintiff bears the burden of proof on that issue.")
[internal quotation marks omitted].

**\*10** In any event, cause exists to grant Defend-
ants' motion. Defendants' motion complies with the
January 18, 2013, deadline for the filing of motions to
amend pleadings. (*See, supra,* note 4 of this Decision
and Order, and accompanying text.) Furthermore,
Defendants have explained why they did not make
their motion long before January 18, 2013. *See, supra,*
Part I.C. of this Decision and Order. In addition, De-
fendants' motion is supported by an affidavit and it
sets forth the proposed amendments. (Dkt. No. 31,
Attach. 1, at ¶¶ 13–15; Dkt. No. 32, Attach. 1.) Fi-
nally, Plaintiff's assertion of prejudice is vague and
conclusory. *See, supra,* Part I.C. of this Decision and
Order. The facts on which Defendants rely in Para-
graph 16 (e.g., the briefness of the delay and the fact
that repair services had been requested, etc.) were
clearly known to Plaintiff early in the action, having
appeared in attachments to his Complaint (*see, e.g.,*
Dkt. No. 1, at 9). Moreover, the facts on which De-
fendants rely in Paragraph 15 (e.g., the relative age of
Coxsackie Correctional Facility as compared to other
New York State correctional facilities) appear to have
been known to Plaintiff well before the amendment
was sought (*see, e.g.,* Dkt. No. 36, Attach. 2, at 3, ¶ 6).

For all of these reasons, the Court grants De-
fendants' motion to amend their Answer.

**D. Plaintiff's Cross–Motion for Summary Judg-
ment**

After carefully considering the matter, the Court
denies Plaintiff's cross-motion for summary judgment
for each of the reasons stated in Defendants' opposi-
tion memorandum of law. *See, supra,* Part I.D.2. of
this Decision and Order. To those reasons, the Court
adds the analysis set forth above in Part I.B. of this
Decision and Order. In addition, the Court adds the
following two brief points.

First, Plaintiff's cross-motion for summary
judgment was due at the time of his response to De-
fendants' motion for summary judgment. N.D.N.Y.
L.R. 7.1(c). Granted, Plaintiff received an extension of
the deadline by which to file that response–until March
4, 2011. (Text Order dated Feb. 1, 2013.) However, he
did not in fact file his cross-motion for summary
judgment with that response. (*Compare* Dkt. No. 36
*with* Dkt. No. 38.) Rather, he waited another 46
days–until April 19, 2011–to file his cross-motion for
summary judgment. (Dkt. No. 38.) Even if the Court
were inclined to set aside his non-compliance with the
deadline imposed by Local Rule 7.1(c), Plaintiff
would be left with the deadline imposed by the Court's
Scheduling Order. That deadline was January 18,
2011–91 days before he filed his crossmotion. (Dkt.
No. 16, at 2–4; Dkt. No. 27; Text Order filed Dec. 17,
2012; Text Order filed Jan. 7, 2013.) This fact alone
may, and does, serve as a sufficient ground on which
to base a denial of Plaintiff's motion for summary
judgment.

Second, with all due respect to Plaintiff's argu-
ment that the Court should deny Defendants' motion to
amend their Answer if it chooses to deny his
cross-motion for summary judgment, that argument
appears to the Court to be a non-sequitur. The fact that
Plaintiff's cross-motion for summary judgment is
untimely does not mean that an amendment of De-
fendants' Answer is untimely or unduly prejudices
Plaintiff.

**\*11** For all of these reasons, the Court denies
Plaintiff's cross-motion for summary judgment.

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

**E. Plaintiff's Cross–Motion to Amend His Complaint**

After carefully considering the matter, the Court denies Plaintiff's cross-motion to amend his Complaint for each of the following three alternative reasons.

First, Plaintiff's cross-motion to amend (filed on June 19, 2013) is in violation of the January 18, 2013, deadline for the filing of motions to amend pleadings (*see, supra,* note 4 of this Decision and Order, and accompanying text), and the March 4, 2013, deadline for the filing of cross-motions (*see, supra,* Parts III.A. and III.D. of this Decision and Order). Furthermore, Plaintiff has failed to show good cause excusing this violation. *See, supra,* Part II.B. of this Decision and Order (setting forth relevant legal standard). This failure is exacerbated by the fact that discovery is closed and Defendants have already incurred the expense of filing a motion for summary judgment; it would be both inefficient and unfair to permit Plaintiff to now change the landscape of his claims.

Second, Plaintiff's cross-motion is unsupported by an affidavit, in violation of Local Rules of Practice for this Court. N.D.N.Y. L.R. 7.1(a)(2). This affidavit is necessary because, inter alia, it serves as the vehicle by which the movant presents to the Court evidence regarding such things as the reason for the delay in seeking the amendment. Moreover, Plaintiff's cross—motion does not set forth the proposed amendments, in violation of Local Rule 7.1(a) (2). Again, fulfilling this requirement is necessary, because it enables the Court (and opposing party) to identify which particular amendments are being proposed. The Court notes that, while it has cursorily summarized what appear to be various amendments contained in Plaintiff's proposed Amended Complaint above in Part I.E. of this Decision and Order, the Court declines to conduct a tedious comparison of the proposed Amended Complaint and original Complaint: that is Plaintiff's duty.

Third, under the circumstances, the relevant factors weigh decidedly against granting the cross-motion to amend. *See, supra,* Part II.B. of this Decision and Order (setting forth relevant legal standard). For example, at the very latest, Plaintiff should have filed this cross-motion to amend with his cross-motion for summary judgment on April 19, 2013, and has not shown cause for excusing its undue delay. Moreover, Defendant will suffer undue prejudice if the crossmotion is granted, because (1) the memories of material witnesses have likely faded, and relevant documents have likely been destroyed, regarding the events giving rise to this action, which occurred nearly three years ago (on April 30, 2011),[FN11] and (2) again, discovery is closed and Defendants have already incurred the expense of filing a motion for summary judgment. Finally, for the many reasons offered by Defendants, the Court finds that, in the alternative, Plaintiff's proposed Amended Complaint is largely, if not entirely, futile. *See, supra,* Parts I.B.1. and I.E. of this Decision and Order. *See also, supra,* note 3 of this Decision and Order.

> FN11. *See Geordiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S . D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

**\*12** For all of these reasons, the Court denies Plaintiff's cross-motion to amend his Complaint.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 31) is ***GRANTED;*** and it is further

**ORDERED** that Defendants' motion to amend

Slip Copy, 2014 WL 1312048 (N.D.N.Y.)
**(Cite as: 2014 WL 1312048 (N.D.N.Y.))**

their Answer (Dkt. No. 31) is ***GRANTED;*** and it is further

    **ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 38) is ***DENIED;*** and it is further

    **ORDERED** that Plaintiff's cross-motion to amend his Complaint (Dkt. No. 45) is ***DENIED.*** The clerk is directed to enter judgment and close this case.

N.D.N.Y.,2014.
Funches v. Fischer
Slip Copy, 2014 WL 1312048 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1326947 (S.D.Ohio)
**(Cite as: 2013 WL 1326947 (S.D.Ohio))**



Only the Westlaw citation is currently available.

United States District Court,
S.D. Ohio,
Western Division.
Darryl Allen ROSS, Plaintiff,
v.
Officer Dustin R. REED, et al., Defendants.

No. 1:13–cv–143.
March 5, 2013.

Darryl Allen Ross, Cincinnati, OH, pro se.

Lawrence Edward Barbiere, Mason, OH, for Defendants.

### ORDER AND REPORT AND RECOMMENDATION

KAREN L. LITKOVITZ, United States Magistrate Judge.

**\*1** Plaintiff, a resident of Cincinnati, Ohio, brings this *pro se* civil rights action under 42 U.S.C. § 1983 against two police officers employed at the Mount Healthy police department. By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive law-suits." *Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.; see also* 28 U.S.C. §§ 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328–29, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir.1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin,* 630 F.3d 468, 471 (6th Cir.2010) (quoting *Neitzke,* 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). By the same token, however, the complaint "must contain sufficient fac-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 1326947 (S.D.Ohio)
**(Cite as: 2013 WL 1326947 (S.D.Ohio))**

tual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Hill,* 630 F.3d at 470–71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2) (B)(ii)).

*2 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U .S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s] devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (citations omitted).

Plaintiff brings this action against Mount Healthy police officers Dustin Reed and Patrick Kemper, Jr. (Doc. 1, Complaint, p. 2). Plaintiff alleges that on March 1, 2011, he returned to his apartment to find medics and the defendants in his apartment. Plaintiff avers that defendants took him into the hallway, slammed him to the floor and "kept punching [his] head up against floor statue." (*Id.,* p. 3). Plaintiff further alleges that the defendants "kneel [ed] with a lot

of force into [his] back as [he] la[y] there unconscious." (*Id.*). Plaintiff states that when he awoke, he heard neighbors telling the defendants that plaintiff was "not moving" and to "stop beating [him] up;" the officers responded by telling the witnesses to go back into their apartments and to "stop watching." (*Id.*). Plaintiff claims that he incurred the following injuries as a result of the defendants' actions: a "busted" ear drum and "back spine and hip pain [that is] still being treated." (*Id.*). As relief, plaintiff seeks damages and requests that "charges" be brought against the defendants. (*Id.,* p. 4).

Liberally construed, the complaint states a claim for damages under § 1983 against the defendants, which is deserving of further development and may proceed at this juncture. *See* 28 U.S.C. § 1915(e)(2)(B).

However, to the extent plaintiff seeks injunctive relief in the form of an order requiring that disciplinary and/or criminal proceedings be initiated against the defendants, the complaint fails to state an actionable claim. The Court has no authority under § 1983 to direct the Mount Healthy police department to initiate any disciplinary proceedings against its employees, nor is plaintiff permitted to "utilize this civil lawsuit as a vehicle to initiate any federal or ... state criminal charges." *See, e.g., Theriot v. Woods,* No. 2:09cv199, 2010 WL 623684, at *4, 13 (W.D.Mich. Feb.18, 2010) (and cases cited therein); *see also Leek v. Thomas,* No. 09–3036–SAC, 2009 WL 1298499, at *3 (D.Kan. May 8, 2009) (and cases cited therein) (dismissing on screening the portion of a civil rights complaint requesting the initiation of a criminal prosecution and for disciplinary action against defendants because those matters were "beyond the authority of this court and therefore are not proper requests for relief"). *Cf. Booth v. Hens on,* 290 F. App'x 919, 920–21 (6th Cir.2008) (affirming screening dismissal of a complaint, where the only relief requested was the issuance of a warrant for the arrest of the defendants); *Meadows v. Miller,* 855 F.Supp. 219, 220

Not Reported in F.Supp.2d, 2013 WL 1326947 (S.D.Ohio)
**(Cite as: 2013 WL 1326947 (S.D.Ohio))**

(W.D.Tenn.1994) (dismissing as frivolous a claim requesting that a county correctional official "be fired"). Accordingly, to the extent that plaintiff requests in the complaint that "charges" be brought against the defendants, it is **RECOMMENDED** that such claim be dismissed on the ground that the requested relief is unavailable to the plaintiff in this civil proceeding.

**IT IS THEREFORE RECOMMENDED THAT:**

**\*3** To the extent that plaintiff seeks relief in the form of an order requiring that disciplinary and/or criminal charges be brought against the defendants, such claim should be **DISMISSED** on the ground that plaintiff has failed to state a claim upon which relief may be granted by this Court. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS THEREFORE ORDERED THAT:**

1. The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued this date granting *in forma pauperis* status, and this Order and Report and Recommendation upon the defendants as directed by plaintiff. All costs of service shall be advanced by the United States.

2. Plaintiff shall serve upon the defendants or, if appearance has been entered by counsel, upon the defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or their counsel. Any paper received by a district judge or magistrate judge which has not been filed with the clerk or which fails to include a certificate of service will be disregarded by the Court.

3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

S.D.Ohio,2013.
Ross v. Reed
Not Reported in F.Supp.2d, 2013 WL 1326947 (S.D.Ohio)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Slip Copy, 2014 WL 840083 (E.D.Mich.)
**(Cite as: 2014 WL 840083 (E.D.Mich.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
JAMES H. STREET, Plaintiff,
v.
Esther RODRIGUEZ, Defendant.

No. 12–13995.
Signed March 4, 2014.

James H. Street, Jackson, MI, pro se.

Kevin R. Himebaugh, Michigan Department of Attorney General, Lansing, MI, for Defendant.

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
LAWRENCE P. ZATKOFF, District Judge.
**\*1** This matter comes before the Court on the Magistrate Judge's Report and Recommendation [dkt 33], in which the Magistrate Judge recommends that the Court grant Defendant's Motion for Summary Judgment [dkt 12]. No objections were filed to the Magistrate's Report and Recommendation, and the time period in which to do so has elapsed. *See* FED. R. CIV. P 72(b)(2).

The Court has thoroughly reviewed the court file and the Report and Recommendation. As a result of that review, the Court ADOPTS the Report and Recommendation and enters it as the findings and conclusions of this Court.

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [dkt 12]

is GRANTED and Plaintiff's complaint is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiff's motions [dkts 34, 35] to supplement arguments contained in his complaint—filed 17 months after commencement of this case and 14 months after Defendant filed her summary judgment motion—are DENIED.

IT IS SO ORDERED.

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket # 12)**
PAUL J. KOMIVES, United States Magistrate Judge.
I. *RECOMMENDATION:* The Court should conclude that plaintiff's claims are moot. Accordingly, the Court should grant defendant's motion for summary judgment and should dismiss the claims as moot.

II. *REPORT:*

A. *Procedural Background*

Plaintiff James H. Street is a state prisoner, currently confined at the Parnall Correctional Facility in Jackson, Michigan.[FN1] At the times relevant to this action, plaintiff was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. Plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 on September 11, 2012. The sole defendant is Esther Rodriguez, a Corrections Officer at the Gus Harrison Correctional Facility. In his statement of facts plaintiff alleges:

> FN1. According to this Court's docket, petitioner is incarcerated at the Marquette Branch Prison in Marquette, Michigan. In his response to defendant's motion, plaintiff

notes that he is now incarcerated at the Parnall Correctional Facility. The Michigan Department of Corrections's Offender Tracking Information System (OTIS) website confirms that plaintiff is incarcerated at the Parnall Correctional Facility. Accordingly, I have entered an Order on this date instructing the Clerk to correct plaintiff's address on the docket. Plaintiff is reminded that under the Local Rules of this Court it is his duty to inform the Court of any change of address during the pendency of this action. *See* E.D. MICH. LR 11.2 ("Every attorney and every party not represented by an attorney must include his or her contact information consisting of his or her address, e-mail address, and telephone number on the first paper that person files in a case. If there is a change in the contact information, that person promptly must file and serve a notice with the new contact information. The failure to file promptly current contact information may subject that person or party to appropriate sanctions, which may include dismissal, default judgment, and costs.").

Correction Officer Rodriquez [sic, throughout this paragraph] (hereinafter C.O. Rodriquez) has been acting in a retaliatory manner towards me, for my filing of grievances against her. C.O. Rodriquez has made verbal threats against my safety. C.O. Rodriquez has harassed me and made me an example to others. C.O. Rodriquez has made sexual innuendo and inappropriate sexual remarks to me. C.O. Rodriquez has touched me inappropriately. C.O. Rodriquez has made derogatory reference to the nature of the offense that I am in prison for in front of other inmates, creating an unsafe atmosphere due to other inmates attitudes toward the nature of my offense. C.O. Rodriquez on other occasions has called me a 'dumb-ass' in reference to my learning disabilities. C.O. Rodriquez has attempted to cause friction between myself and my cu-

be-mates. C.O. Rodriquez has caused me to fear leaving the cube to take showers, go to the rest-room, or to even pass by her, for fear of more intimidation and danger.

Compl., at 5, Statement of Facts. In an attached affidavit, plaintiff details the specific incidents of harassment and retaliation he claims to have suffered at the hands of defendant Rodriguez. These include verbal harassment, sexual harassment, searches of his cell, and false misconduct tickets. In his complaint, plaintiff does not seek monetary damages. Rather, he seeks various forms of injunctive relief. Specifically, the entirety of the "Relief" portion of his form complaint states:

**\*2** I want the harassment to stop. I want Officer Rodriquez [sic, throughout this paragraph] to cease and desist the continual harassment and emotional torture. I want to be treated humanely and with dignity in matters of health care, personal safety and general living conditions. I also do not want to be discriminated against based on race, religion, ethnic background, sex, sexual orientation, gender identity, national origin, or disability. I simply want humane treatment and living conditions. I am also requesting appropriate administrative sanctions to be implemented requiring C.O. Rodriquez to attend, seminars or classes on appropriate responses to

2:12–cv–13995–LPZ–PJK   Doc #  33   Filed 02/07/14 Pg 3 of 9 Pg ID 261 stressful situations and how to go about treating prisoners with dignity as well as any punitive measures that this court deems appropriate and necessary in order to change her negative attitudes and behaviors.

Compl., at 6, Relief. On October 31, 2012, plaintiff filed an amended complaint. The Statement of Facts and Relief sections of the amended complaint are identical to plaintiff's initial complaint. The only change from the original complaint is the addition of a second affidavit detailing other incidents of harassment.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 840083 (E.D.Mich.)
**(Cite as: 2014 WL 840083 (E.D.Mich.))**

The matter is currently before the Court on defendant's motion for summary judgment, filed on December 11, 2012. Defendant argues that she is entitled to summary judgment because plaintiff has now been transferred from the Gus Harrison Correctional Facility, and thus his claims for injunctive relief, which is the only type of relief he seeks, are moot. In the alternative, defendant contends that she is entitled to summary judgment on the merits of plaintiff's claims because plaintiff cannot present a genuine issue of material fact that she violated his constitutional rights. Plaintiff filed a response to the motion on March 19, 2013. In addition, plaintiff has filed separate affidavits in support of his response. For the reasons that follow, the Court should conclude that plaintiff's claims are moot. Accordingly, the Court should grant defendant's motion for summary judgment.

B. *Legal Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 451 (6th Cir.2004) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick,* 355 F.3d at 451–52 (citing *Anderson,* 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury,* 344 F.3d 603, 613 (6th Cir.2003); *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir.2003).

**\*3** "The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving

party's case." *Hedrick,* 355 F.3d at 451 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.,* 477 U.S. at 325; *see also,* FED. R. CIV. P. 56(c) (1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir.2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also,* FED. R. CIV. P. 56(e). To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50. (citations omitted); *see Celotex Corp.,* 477 U.S. at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland,* 344 F.3d at 613.

Slip Copy, 2014 WL 840083 (E.D.Mich.)
**(Cite as: 2014 WL 840083 (E.D.Mich.))**

C. *Analysis*

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.' Accordingly, '[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Chafin v. Chafin,* ––– U.S. ––––, ––––, 133 S.Ct. 1017, 1023, 185 L.Ed.2d 1 (2013) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). The " 'case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. [I]t is not enough that a dispute was very much alive when suit was filed'; the parties must 'continue to have a "personal stake" ' in the ultimate disposition of the lawsuit." *Id.* (quoting *Lewis,* 494 U.S. at 477–78 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) (citation omitted). Thus, there is "no case or controversy, and a suit becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *Id.* (quoting *Already, LLC v. Nike, Inc.,* ––– U.S. ––––, ––––, 133 S.Ct. 721, 726, 184 L.Ed.2d 553 (2013) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam))).

**\*4** Here, plaintiff seeks only injunctive relief; he does not seek monetary damages. And it is undisputed that petitioner has been transferred from Gus Harrison, and that defendant Rodriguez no longer has any role in his incarceration. It is well established that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir.2002); *see also, Incumaa v. Ozmint,* 507 F.3d 281, 286–87 (4th Cir.2007) (citing cases from Second, Third, and Eighth Circuits); *Sutton v. Rasheed,* 323 F.3d 263, 248 (3d Cir.2003); *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996). Because plaintiff is no longer subject to the care of the official he claims was denying him his constitutional rights, his request for injunctive relief is moot. *See Candelaria v. Coughlin,* 787 F.Supp. 368, 378 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir.1992). And because plaintiff has sought only injunctive relief, the entire case is moot. *See American Civil Liberties Union of Mass. v. United States Conference of Catholic Bishops,* 705 F.3d 44, 53 (1st Cir.2013) (circumstances in which "a court cannot provide meaningful relief to the allegedly aggrieved party" is "clearest in cases where the only relief requested is an injunction."); *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 698–99 (3d Cir.1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."); *Towle v. New Hampshire Dep't of Corrections,* No. 06–cv–462, 2008 WL 2080782, at \*5 (D.N.H. May 14, 2008) ("If Towle's complaint contained a colorable, well-pleaded claim for damages under Section 1983, it is possible that portion of his case may have survived a mootness challenge. His original complaint did in fact assert a claim for damages, but his amended complaint contains no such request, and is limited to injunctive and declaratory relief. As those claims are now moot, his entire action is subject to dismissal."). Because the only relief requested by plaintiff has been rendered moot by his transfer, the entire case must be dismissed as moot. *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir.1997); *Towle,* 2008 WL 2080782, at \*5.

Plaintiff argues that his claims are not moot because he has continued to suffer harassment and retaliation since his transfer from the Gus Harrison Correctional Facility. This argument is without merit. Although plaintiff claims to have suffered continued harassment, he does not allege that this harassment has come at the hands of defendant Rodriguez. Rather, he contends that other MDOC officials have continued to retaliate against him. None of these other officials, however, are named as defendants in plaintiff's suit. The Court lacks jurisdiction to enter an injunction against officials who are not parties to this suit. "It is

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 840083 (E.D.Mich.)
**(Cite as: 2014 WL 840083 (E.D.Mich.))**

elementary that one is not bound by a judgment in *personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (citation omitted). A court is powerless to adjudicate a personal claim against a party unless it has jurisdiction over the party, and even a party who is alleged to be in concert or participation is to be accorded a hearing for a determination of his role in the matter before a determination is made that the party is subject to the injunction. *See id.* at 112; *Ron Matusalem & Matusa, Inc. v. Ron Matusalem, Inc.,* 872 F.2d 1547, 1554 (11th Cir.1989). Thus, the Court cannot subject officials other than defendant Rodriguez to an injunction, as they have not been named as defendants and served in accordance with Rule 4 of the Federal Rules of Civil Procedure. *See Guillen v. Thompson,* No. 08–1279, 2009 WL 2513501, at *7 (D.Ariz. Aug.14, 2009); FED. R. CIV. P. 65(d)(2) (injunction is binding only on parties, their agents, and persons acting in concert with parties).

**\*5** Plaintiff also argues that his claims are not moot because he does not seek only injunctive relief, but also what he characterizes as punitive relief and "administrative sanctions," including an order requiring defendant Rodriguez to attend seminars and disciplinary sanctions against her. This argument is without merit for two reasons. First, any such administrative sanctions would presumably have to be carried out by supervisory officials of the MDOC and it is therefore they who would be bound by the relief requested by plaintiff. And, as just noted, no such other officials have been made subject to the jurisdiction of the Court by being named in plaintiff's complaint and served with process. Second, the Court lacks the power to grant the relief requested by plaintiff. An order that the MDOC or MDOC officials impose sanctions on an employee or specify the conditions under which the employee should be employed "unnecessarily intrudes on [the prison's] operations" and

is "an inappropriate use of the court's equity powers." *LaMarca v. Turner,* 995 F.2d 1526, 1543 (11th Cir.1993) (citing *Rhodes v. Chapman,* 452 U.S. 337, 351, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1974)). Thus, this Court has no authority to order the MDOC or any MDOC official to terminate the employment of, or otherwise discipline, defendant Rodriguez. *See Ross v. Reed,* No. 1:13–CV–143, 2013 WL 1326947, at *2 (Mar. 5, 2013), *magistrate judge's report adopted,* 2013 WL 1314735 (S.D.Ohio Mar.28, 2013); *Theriot v. Woods,* No. 2:09–cv–199, 2010 WL 623684, at *4 (W.D.Mich. Feb.18, 2010); *Leek v. Thomas,* No. 09–3036, 2009 WL 1298499, at *3 (D.Kan. May 8, 2009); *Davis v. Samuels,* No. 3:07–3463, 2007 WL 4376074, at *3 (D.S.C. Dec.13, 2007); *Meadows v. Miller,* 855 F.Supp. 219, 220 (W.D.Tenn.1994).

D. *Conclusion*

In short, the only relief requested by plaintiff that the Court has the power to award has been rendered moot by plaintiff's transfer to a prison at which he is not subject to the care and treatment of defendant Rodriguez. Because the Court could not grant meaningful relief to plaintiff, the case is now moot. Accordingly, the Court should grant defendant's motion for summary judgment, and should dismiss plaintiff's claims as moot.

III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with speci-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 840083 (E.D.Mich.)
**(Cite as: 2014 WL 840083 (E.D.Mich.))**

ficity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

**\*6** Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Filed Feb. 7, 2014.

E.D.Mich.,2014.
Street v. Rodriguez
Slip Copy, 2014 WL 840083 (E.D.Mich.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.